**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE: NITROGEN, PHOSPHORUS, AND POTASSIUM (NPK) FERTILIZER ANTITRUST LITIGATION

This Document Relates To:
ALL CASES

MDL No. 3187

Case No. 26-md-3187-EFM-BGS

**ORDER APPOINTING COUNSEL**

The Court's Initial Procedure Order No. 1 directed counsel seeking a leadership role in the organizational structure of this multi-district litigation ("MDL") to submit a proposal describing counsel's qualifications for the selection. The Court received many thoughtful and well-developed proposals and heard arguments from counsel at the Initial Management Conference on September 22, 2026. Having considered the proposals, arguments, and the factors set forth in § 10.224 of the Manual for Complex Litigation, Fourth ("MCL 4th") and Federal Rule of Civil Procedure 23(g), the Court selects the leadership structure and counsel proposed by the Kansas Consensus Plaintiffs. Additionally, the Court appoints Michael Dell'Angelo and his firm, Berger Montague PC, as Co-Lead Counsel for the Direct Purchaser Class; Eric Barton and his firm, Wagstaff & Cartmell, LLP, as a member of Plaintiffs' Steering Committee for the Direct Purchaser Class; and Sterling Aldridge and her firm, Barrett Law Group, P.A., as a member of the Plaintiffs' Steering Committee for the Indirect Purchaser Class.

It is important to note that the Court received proposals from many exceptional candidates who are not being selected as leadership counsel. The Court is confident that had these candidates been chosen, they would have performed their duties with the utmost diligence and capability. The Court greatly appreciates the time and effort these candidates devoted to preparing and presenting their proposal. The Court, however, reaches its decision here for the reasons explained below.

## I. Background

Generally, Plaintiffs allege that Defendants conspired to fix, raise, and maintain the price of nitrogen, phosphorus, and potassium fertilizers ("NPK Fertilizers") from January 2021 to present. The Judicial Panel on Multidistrict Litigation ("JPML") consolidated and transferred all related cases to this Court. In its Initial Procedure Order No. 1, the Court asked counsel to prepare an initial management report that summarized the parties' views on, among other things, the appointment and structure of leadership counsel. The Court also called for applications for the leadership positions.

The parties' Joint Initial Management Report states that this MDL warrants appointing leadership counsel for Plaintiffs and sets forth a proposed leadership structure based on Plaintiffs' claims as direct or indirect purchasers. Direct purchasers purchased fertilizer products from Defendants and assert claims under the Sherman Antitrust Act. Indirect purchasers purchased fertilizer from intermediary suppliers and assert claims under their respective states' law. Because the direct and indirect purchasers' claims and proof are not entirely the same, Plaintiffs ask the Court to appoint leadership counsel for (1) a Direct Purchaser Class and (2) an Indirect Purchaser Class. Plaintiffs agree that leadership for each class should comprise of a group of firms serving as Co-Lead Counsel, a group of firms serving on a steering committee to assist Co-Lead Counsel in fulfilling their duties, and if appropriate, liaison counsel.

Defendants do not believe that the appointment of leadership counsel is necessary for Defendants, and therefore, do not request the Court do so on their behalf. Defendants state, however, that they will communicate among themselves to streamline negotiations with Plaintiffs, minimize duplicative filings, and otherwise facilitate efficiency for the Court. At the hearing, the Court directed Defendants to confer among themselves and file a suggestion no later than 10 days after the hearing as to how they will coordinate future filings, including their motions to dismiss.

## II. Legal Standard

Under Rule 23(g), "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."[1] "MDL transferee judges, who must appoint plaintiff leadership at the outset of the proceedings, have often adopted the Rule 23(g) factors as qualifications for leadership roles."[2] Those factors are:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.[3]

A district court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."[4]

The Court's Initial Procedure Order No. 1 asked the parties to address the MCL 4th § 10.224 factors. These factors closely track the Rule 23(g) factors but also include "whether there

---

[1] Fed. R. Civ. P. 23(g)(3).

[2] *In re Santa Fe Nat'l Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*, 2018 WL 4200315, at *4 (D.N.M. Aug. 31, 2018) (citation omitted).

[3] Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

[4] Fed. R. Civ. P. 23(g)(1)(B).

has been full disclosure of all agreements and understandings among counsel," "whether there are clear and satisfactory guidelines for compensation and requirement and whether the arrangements for coordination among counsel are fair, reasonable, and efficient," "whether designated counsel fairly represent the various interests in the litigation," and "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court."[5]

## III. Appointment of Leadership Structure and Counsel

### A. Leadership Structure

As an initial matter, the Court must establish the leadership structure for Plaintiffs' counsel. Having reviewed the candidates' proposals, the Court finds that the Kansas Consensus Plaintiffs proposed the most efficient and fair structure for managing this MDL moving forward.[6] For the most part, their proposal mirrors the leadership structure proposed by all Plaintiffs in the Joint Initial Management Report. First, the Kansas Consensus Plaintiffs propose a group of Co-Lead Counsel for the Direct Purchaser Class and a group of Co-Lead Counsel for the Indirect Purchaser Class. They also propose that one attorney from each group serve as Coordinating Co-Lead Counsel to manage the activities between the two Classes.

When appointing counsel, the MCL 4th directs courts to consider whether "designated counsel fairly represent the various interests in the litigation—where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests."[7] Here,

---

[5] MCL 4th § 10.224.

[6] *See* MCL 4th § 10.221 ("The types of appointments and assignments of responsibilities will depend on many factors. The most important is achieving efficiency and economy without jeopardizing fairness to the parties.").

[7] *See* MCL 4th § 10.224 (stating that "where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests").

the Direct Purchaser Class brings its claims under the Sherman Antitrust Act and the Indirect Purchaser Class bring its claims under different states' antitrust and consumer protection laws. Although all Plaintiffs must prove certain factual allegations concerning the existence of a conspiracy, the elements of their claims are not the same. Having separate and independent counsel for the Direct and Indirect Purchaser Classes thus protects each Class's interests and solves any potential conflicts that arise.[8] At the same time, having one attorney from each Co-Lead group serve as Coordinating Co-Lead Counsel facilitates cooperation between Plaintiffs and promotes efficiency on those issues where the interests of the Direct and Indirect Purchasers align. As the Kansas Consensus Plaintiffs noted in their proposal, Coordinating Co-Lead Counsel "can prevent duplication and keep positions consistent for the benefit of all Plaintiffs, Defendants, non-parties, and the Court."

Next, the Kansas Consensus Plaintiffs propose a Plaintiffs' Steering Committee ("PSC") for each Class, with each PSC consisting of at least four members. They contend that this MDL's complexity and scope justify the establishment of a PSC for each class. The Court agrees. This MDL involves five sets of corporate Defendants, nationwide and foreign discovery, and significant expert and economic work. The proposed PSCs provide additional resources for Co-Lead Counsel to handle the substantial workload Plaintiffs' lawyers face. Furthermore, plaintiffs in comparable antitrust cases have used PSCs to help allocate work and coordinate distinct purchaser groups.[9]

---

[8] The Kansas Consensus Plaintiffs specifically propose that a group of three attorneys and their respective firms serve as Co-Lead Counsel for each Class of purchasers. The Court largely follows this proposed structure but expands the leadership group for the Direct Purchaser Class to include a fourth attorney and his respective firm as Co-Lead Counsel.

[9] *E.g.*, *In re Archery Prods. Antitrust Litig.*, No. 1:25-md-03160, ECF No. 96 (D. Colo. Nov. 21, 2025) (appointing interim co-lead counsel, PSC, and liaison counsel for both direct and indirect purchaser plaintiffs); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, No. 5:24-md-03107, ECF No. 137 (N.D. Ohio July 3, 2024) (appointing separate leadership for direct purchasers, end payors, and reseller plaintiffs).

And other Judges in this District have adopted multi-firm structures, such as the one proposed by the Kansas Consensus Plaintiffs, for a steering or executive committee.[10]

Finally, the Kansas Consensus Plaintiffs propose a single liaison counsel for both Classes. This is consistent with the MCL 4th[11] and all Plaintiffs' proposal in the Joint Initial Management Report. The Court agrees with the Kansas Consensus Plaintiffs that having one liaison counsel, rather than two, streamlines communications between counsel and counsel and the Court.

For these reasons the Court adopts the Kansas Consensus Plaintiffs' proposed leadership structure.

### B. Co-Lead Counsel

The Court appoints interim Co-Lead Counsel as set forth below.

| Direct Purchaser Counsel | Indirect Purchaser Counsel |
|---|---|
| **Coordinating Co-Lead Counsel:**<br>Patrick McGahan<br>Scott+Scott Attorneys at Law LLP | **Coordinating Co-Lead Counsel:**<br>Patrick Stueve<br>Stueve Siegel Hanson LLP |
| **Co-Lead Counsel:**<br>Stuart A. Davidson<br>Robbins Geller Rudman & Dowd LLP | **Co-Lead Counsel:**<br>Rex A. Sharp<br>Sharp Law LLP |
| **Co-Lead Counsel:**<br>Michelle Looby<br>Gustafson Gluek PLLC | **Co-Lead Counsel:**<br>Don M. Downing<br>Gray Ritter & Graham PLLC |
| **Co-Lead Counsel:**<br>Michael Dell'Angelo<br>Berger Montague | |

[10] *In re Syngenta AG MIR162 Corn Litig*. ("*Syngenta*"), 2015 WL 13679782, at *2 (D. Kan. Feb. 13, 2015) (appointment four lead counsel and a 10-member executive committee); *In re EpiPen (Epinephrine Injection USP) Mktg., Sales Pracs. & Antitrust Litig*. ("*EpiPen*"), No. 17-md-02785, ECF No. 40 (D. Kan. Sep. 12, 2017) (initially appointing four co-lead counsel and a seven-member PSC).

[11] *See* MCL 4th § 10.221 (stating that liaison counsel is often designated by the court to act on behalf of other counsel and parties in addition to their own clients and is typically charged with administrative matters, such as communication between the court and other counsel).

The Court selects the Co-Lead Counsel groups proposed by the Kansas Consensus Plaintiffs, augmented by the addition of Berger Montague as Co-Lead Counsel for the Direct Purchaser Class. These firms presented the most comprehensive applications to serve as lead counsel in this case. Moreover, these firms and their lawyers satisfy the criteria for selection set forth in Rule 23(g) and the MCL 4th. They have performed extensive work identifying and investigating potential claims; have experience leading complex litigation, including litigation involving antitrust claims; are knowledgeable in the law; and have the necessary resources to self-fund the case and commit the time, staff, and expert resources a contested antitrust class action of this scope demands.

Specifically, the leadership counsel proposed by Kansas Consensus Plaintiffs spent significant time investigating the claims in this action. They filed comprehensive, detailed complaints asserting claims under federal and numerous states' law. They represent at least 74 Plaintiffs from 28 states.[12] And, their application is supported by a vast majority of Plaintiffs.[13] The Kansas Consensus Plaintiffs' leadership counsel also has extensive experience in class action litigation, large-scale antitrust and agricultural litigation, and litigating in this District. Several lawyers from this group have represented plaintiffs in this District's largest MDLs. For example, in *Syngenta*, Mr. Stueve and Mr. Downing produced "one of the largest known settlements in any kind of case."[14] Judge John W. Lungstrum praised their leadership, observing that they "were very

---

[12] As of the date of this Order, the Kansas Consensus Plaintiffs represent at least 74 out of 120 total Plaintiffs.

[13] *See In re Aluminum Phosphide Antitrust Litig.*, 1994 WL 481847, at *5 (D. Kan. May 17, 1994). ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel.").

[14] *Syngenta*, 357 F. Supp. 3d 1094, 1114 (D. Kan. 2018).

experienced, had very good reputations, were excellent attorneys, and performed excellent work."[15] Judge Daniel D. Crabtree similarly praised Mr. Sharp and the Robbins Geller firm in *EpiPen* noting that they performed "exceptional legal work on behalf of their clients and the Class."[16]

Mr. Dell'Angelo and his law firm, Berger Montague, also have extensive experience and success in litigating complex class action and antitrust lawsuits. Berger Montague is the only law firm in this MDL with a Band 1 ranking from *Chambers & Partners* for its plaintiffs-side antitrust work. The Court was particularly impressed with Mr. Dell'Angelo's practice with Berger Montague Canada on cross-border antitrust matters. During the hearing, Mr. Dell'Angelo stated that he is a foreign legal consultant in Canada through Berger Montague's Toronto law firm and has experience obtaining discovery from Canadian companies in U.S.-based litigation. Berger Montague's application also states that the Berger Montague Canada team will be able to advise on Canadian legal issues, including Canadian privacy laws that may be cited as restricting discovery in this litigation. This capability is especially helpful as there are four Defendants in this MDL that are Canadian entities.

The Court could form its own leadership groups for the Direct and Indirect Purchaser Classes from the entire group of highly-qualified candidates. But as Judge Lungstrum noted in *Syngenta*, building such an "All-Star team" is "tempting, but fraught with peril."[17] An All-Star team does not necessarily translate into a cohesive or effective leadership group. Successful

---

[15] *Id*. at 1113.

[16] *EpiPen*, 2022 WL 2663873, at *5 (D. Kan. July 22, 2022).

[17] *Syngenta*, 2015 WL 13679782, at *2.

leadership in an MDL is achieved through counsel who can work collaboratively and divide responsibilities effectively. The Kansas Consensus Plaintiffs have given substantial thought to these issues, as they have already assembled a team that is committed to and currently working together. And, although the Court added Berger Montague as an additional member of the Direct Purchaser Class Co-Lead Counsel group, the Court is not concerned that this addition will compromise the group's effectiveness. Mr. Dell'Angelo and other members of his firm have worked in co-counsel arrangements in many antitrust cases, even those where the pairing was the court's choice. Accordingly, the Court is confident that the selected counsel will effectively advance this case.

Plaintiffs' Co-Lead Counsel must assume responsibility for the following duties during all phases of the litigation:

- determine and present to the Court and opposing parties Plaintiffs' position on all matters, whether in pleadings, motions, briefs, oral argument, or such other fashion as may be appropriate, and whether personally or by a designee;
- coordinate the initiation of and conduct discovery on behalf of Plaintiffs consistent with the requirements of Federal Rules of Civil Procedure 26(b)(1), 26(b)(2), and 26(g), including preparing interrogatories and requests for production of documents and examining witnesses in depositions;
- conduct all pretrial proceedings on behalf of their respective proposed Class(es) and serve as spokesperson for those Class(es);
- consult with and retain expert witnesses and vendors for data hosting and processing, as necessary;
- negotiate with defense counsel regarding all matters, including settlement;
- prepare and file any motion for approval of settlement, including preliminary and final approval motions, and any application for an award of attorneys' fees and reimbursement of litigation expenses incurred by their respective proposed classes;

- prepare recommendations for the Court regarding the allocation of attorneys' fees and costs among Plaintiffs' counsel, subject to the Court's approval in the event of any dispute;

- promote the efficient conduct of this litigation and avoid unnecessary duplication and unproductive efforts by delegating and supervising specific work assignments; assign tasks to members of the PSCs or other counsel, as necessary, to assist in the efficient prosecution of this litigation;

- prepare and distribute to Plaintiffs' counsel periodic status reports;

- monitor delegated assignments, and implement procedures to ensure that schedules are met, including collecting regular time and expense reports from each firm to control unnecessary expenditures;

- coordinate with counsel for other parties, third-parties, or governmental entities as appropriate and necessary on matters addressed in this report to ensure efficient use of the parties' and the Court's time;

- communicate with the Court and other counsel, including receiving and distributing notices, orders, motions, and briefs on behalf of Plaintiffs;

- convene meetings of counsel, advise the parties of developments, and otherwise assist in coordinating activities and positions; and

- perform such other duties as they deem necessary and appropriate, or as the Court may further order.

### C. Plaintiffs' Steering Committees

The Court selects the following attorneys to Plaintiffs' Steering Committees.

| **Plaintiffs' Steering Committee**<br>**Direct Purchaser Class** | **Plaintiffs' Steering Committee**<br>**Indirect Purchaser Class** |
|---|---|
| Melissa Yeates<br>Kessler Topaz Meltzer & Check, LLP | Evelyn Yifei Riley<br>Cuneo Gilbert Flannery & LaDuca, LLP |
| Yifan (Kate) Lv<br>Burke LLP | Amanda Williams<br>Bassford Remele, P.A. |
| Jessica N. Servais<br>Lockridge Grindal Nauen PLLP | Kaitlin Naughton<br>Cafferty Clobes Meriwether & Sprengel, LLP |
| Margaret Ciavarella MacLean<br>Lowey Danenberg P.C. | Adam Zapala<br>Cotchett Pitre & McCarthy LLP |
| Eric Barton<br>Wagstaff & Cartmell | Sterling Aldridge<br>Barrett Law Group, P.A. |

The Court selects the PSCs proposed by the Kansas Consensus Plaintiffs. These attorneys bring additional experience and skills that justify their addition to the leadership structure. They have litigated complex antitrust class actions in federal courts across the country. Additionally, they currently serve, or have previously served, as leadership counsel in other MDL and class action cases. Their ability to manage large-scale litigation ensures effective and efficient representation for the class.

The Kansas Consensus Plaintiffs' proposal left one position vacant on each PSC for appointment by Court in its discretion. To that end, the Court appoints Eric Baron and his firm, Wagstaff & Cartmell, to the Direct Purchaser Class PSC and Sterling Aldridge and her firm, Barrett Law Group, P.A., to the Indirect Purchaser Class PSC. Mr. Barton is the only attorney within the Direct Purchaser Class leadership group who practices in Kansas. His familiarity with this District's local rules, practice guidelines, and procedures will be a valuable addition to the Direct Purchaser Class leadership team. Ms. Sterling is the sole applicant for the fifth position in the Indirect Purchaser Class PSC. The Court favorably views her practical experience working with farmers like those in the Indirect Purchaser Class as well as her commitment and willingness to personally participate and contribute to the litigation.

**D. Liaison Counsel**

The Court appoints David Rebein and his firm, Rebein Brothers P.A., as liaison counsel for all Plaintiffs. Plaintiffs' liaison counsel is responsible for performing the duties and responsibilities described in the MCL 4th § 10.221, including facilitating and expediting communications with and among Plaintiffs' counsel and fulfilling such other duties as requested by the Court or Co-Lead Counsel. The Court also orders the following:

- Plaintiff's liaison counsel is designated as the counsel for all Plaintiffs in all cases upon whom others must serve all notices, orders, pleadings, motions, discovery, and memoranda;

- Plaintiffs' liaison counsel is authorized to: (a) receive orders, notices, correspondence, and telephone calls from the Court and the Clerk of the Court on Plaintiffs' behalf; (b) prepare and transmit copies of such orders and notices on Plaintiffs' behalf; and (c) receive orders and notices from the JPML;

- Plaintiffs' liaison counsel must maintain complete files with copies of all documents served and make such files available to all Defendants' counsel on request; and

- Plaintiffs' liaison counsel must maintain and make available to all counsel and the Court an up-to-date service list.

**E. Plaintiffs' Counsel Time and Expense Records**

As set forth in the Joint Initial Management Report, the Court directs Co-Lead Counsel to develop, disseminate, and implement a time and expense protocol for the Direct Purchaser Class and the Indirect Purchaser Class within 30 days of appointment. Counsel performing authorized common-benefit work for a proposed class shall transmit monthly time and expense reports to Co-Lead Counsel. Co-Lead Counsel will review and audit those reports for compliance with the applicable protocol and ensure that any submitted time and/or expense was properly authorized by Co-Lead Counsel.

**F. Application of this Order**

This Order applies to all actions included in MDL No. 3187, subsequently transferred "tag-along" actions, and all actions directly filed in this MDL proceeding.

Plaintiffs' liaison counsel must serve a copy of this Order promptly by overnight delivery service, facsimile, or other electronic means on counsel for Plaintiffs in each related action not yet consolidated in this proceeding to the extent that Plaintiffs' liaison counsel is aware of any such

action(s) and on all attorneys for Plaintiffs whose cases have been so consolidated but have not yet registered for ECF.

**IT IS SO ORDERED**.

Dated this 28th day of September, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE